UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

GINA G.,[1]

        Plaintiff,

    v.                                                         23-CV-306-LJV
                                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

———————————————————————

On April 6, 2023, the plaintiff, Gina G. ("Gina"), brought this action under the

Social Security Act ("Act").  Docket Item 1.  She seeks review of the determination by

the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*

On August 3, 2023, Gina moved for judgment on the pleadings, Docket Item 8; on

October 18, 2023, the Commissioner responded and cross-moved for judgment on the

pleadings, Docket Item 13; and on October 31, 2023, Gina replied, Docket Item 14.  For

the reasons that follow, Gina's motion is denied and the Commissioner's cross motion is

granted.[3]

———————————————

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Gina applied for Disability Insurance Benefits ("DIB"), which may be awarded to
any adult with a disability who, based on his or her quarters of qualifying work, meets
the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c).

[3] This Court assumes familiarity with the underlying facts, the procedural history,
and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts
necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").  But "where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986 (citation modified).

2

**DISCUSSION**

**I.    THE ALJ'S DECISION**

On December 28, 2022, the ALJ found that Gina had not been under a disability between her alleged disability onset date, December 31, 2010, and her date last insured, September 30, 2012.  *See* Docket Item 5 at 885–97.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a).  *See id.*

At step one, the ALJ found that Gina had not engaged in substantial gainful activity during the relevant period.  *Id.* at 888.  At step two, the ALJ found that Gina suffered from four severe, medically determinable impairments: (1) an unspecified vision impairment; (2) degenerative disc disease of the neck and low back; (3) headaches; and (4) a history of thyroid cancer.  *Id.*

At step three, the ALJ found that Gina's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 888–89.  More specifically, the ALJ found that Gina's physical impairments did not meet or medically equal listings 1.15 (disorders of the skeletal spine resulting in the compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in the compromise of the cauda equina), 11.00 (neurological disorders), or 13.09 (cancer of the thyroid gland).  *Id.*

The ALJ then found that Gina had the residual functional capacity ("RFC")[4] to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a), except that:

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-

3

[Gina] was able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; [was able to] sit 2-3 hours continuously and 6 hours total; [was able to] stand 30 minutes continuously and 1 hour total; [was able to] walk 30 minutes continuously and 1 hour total; was limited to occasional use of ramps and stairs and no use of ladders, ropes, and scaffolds; was able to occasionally stoop, kneel, crouch, and crawl; could occasionally overhead reach and frequently reach otherwise; and was able to frequently handle and finger.  In addition, [Gina] was unable to perform any work at unprotected heights or around heavy machinery or moving mechanical parts; was limited to occasional exposure to extreme heat, cold, wetness[,] or humidity; could not be exposed to any loud noise; could not perform tasks that required far acuity or work at computer monitors; and was able to avoid ordinary work hazards like boxes on the floor, open doors[,] or approaching vehicles.

*Id.* at 889.

At step four, the ALJ found that Gina could no longer have performed any past relevant work during the period at issue.  *Id.* at 896.  But given Gina's age, education, and RFC, the ALJ found at step five that Gina could have performed substantial gainful activity as a table worker, ink printer, or dial marker.  *Id.* at 896-97; *see Dictionary of Occupational Titles* 739.687-182, 1991 WL 680217 (Jan. 1, 2016); *id.* at 652.685-038, 1991 WL 685750 (Jan. 1, 2016); *id.* at 729.684-018, 1991 WL 679720 (Jan. 1, 2016).  The ALJ therefore found that Gina had not been under a disability during the period at issue.  *See* Docket Item 5 at 897.

## II.    ALLEGATIONS

Gina argues that the ALJ erred in two ways.  *See* Docket Item 8-1 at 15–23.  First, she argues that the ALJ improperly evaluated the medical source statements of

---

8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

her treating provider, Deirdre Bastible, MD.  *See id.* at 15–19.  Second, she argues that the RFC determination was unsupported by substantial evidence because the ALJ improperly cherry-picked evidence from the opinion of the testifying expert, Nitin Dhiman, MD.

### III.   ANALYSIS

#### A.  Evaluation of Dr. Bastible's Opinion

For claims filed before March 27, 2017, such as Gina's, "there are specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion."  *Schillo v. Kijakazi*, 31 F.4th 64, 74–75 (2d Cir. 2022) (citation modified); *see* 20 C.F.R. § 404.1527.  "First, the ALJ must decide whether the opinion is entitled to controlling weight."  *Schillo*, 31 F.4th at 75 (citation modified).  "The opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record."  *Id.*

"Second, if the ALJ decides the opinion is not entitled to controlling weight, [he or she] must determine how much weight, if any, to give it."  *Id.* (citation modified).  Under the applicable regulations, an ALJ must "explicitly consider certain nonexclusive factors when making this determination: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Id.* (citation modified); *see* 20 C.F.R. § 404.1527(c).  Those

factors "are sometimes referred to as the '*Burgess* factors.'"  *Schillo*, 31 F.4th at 75; *see*

*Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2009).

"At both steps, the regulations require the ALJ to give 'good reasons'—i.e.,

reasons supported by substantial evidence in the record—for the weight [the ALJ]

affords the treating source's medical opinion."  *Schillo*, 31 F.4th at 75.  And "if the ALJ

proceeds to step two, [he or] she must *explicitly* apply the factors listed in [20 C.F.R.

§ 404.1527(c)]; the failure to do so is procedural error and subject to harmless error

analysis."  *Id.* (citation modified).  Stated differently, "a court can conclude that such an

error is harmless if the ALJ has otherwise provided 'good reasons' for [his or her] weight

assignment."  *Id.* (citation modified).

On December 1, 2016, Dr. Bastible provided a letter for Gina's disability file.  *See*

Docket Item 4 at 792.  In that letter, Dr. Bastible wrote:

> Gina is a patient with this office.  She has multiple medical
> issues which deem her unable to maintain employment.  Her
> medical conditions include [d]epression, [v]isual impairment,
> [b]ack pain, [s]yncope, and [a]nxiety.  These conditions began
> in 2005 and continue to present day.  It is my opinion that she
> is permanently disabled.

*Id.*  Once the ALJ was assigned to Gina's case, he asked Dr. Bastible to complete two

new medical source statements related to Gina's physical and mental health,

respectively.  *See* Docket Item 5 at 418.  The ALJ also asked Dr. Bastible to "identify

the specific objective studies, tests[,] and/or exam findings in [her] reports that

support[ed] her position [that Gina became disabled before September 30, 2012]."  *See*

*id.*

On March 24, 2021, Dr. Bastible completed the new medical source statements

related to Gina's physical and mental health.  *See id.* at 422–30.  In the physical

6

medical source statement, Dr. Bastible opined, among other things, that Gina could only: (1) occasionally lift and carry up to 10 pounds; (2) sit or stand between 20 and 25 minutes at a time; (3) walk for 20 minutes at a time; (4) occasionally reach with her left or right hand; (5) occasionally operate foot controls with her left or right foot; (6) occasionally climb ramps or stairs; and (7) occasionally operate a motor vehicle. *See id.* at 421–26. Dr. Bastible further opined that although Gina could avoid ordinary workplace hazards—such as boxes on the ground, open doors, or approaching people or vehicles—she could not read very small, ordinary newspaper, or ordinary book print, and she could not determine differences in the shape or color of small objects. *See id.* at 425.

In the mental medical source statement, Dr. Bastible opined that Gina was moderately impaired in her ability to: (1) understand, remember, and carry out complex instructions; (2) make judgments on complex work-related decisions; and (3) respond appropriately to usual work situations and to changes in a routine work setting. *See id.* at 428–29. Dr. Bastible also opined that Gina's ability to concentrate, persist, or maintain pace, as well as her ability to adapt or manage herself, was impaired, but she attributed those issues to Gina's physical impairments. *See id.* at 429.

Despite Dr. Bastible's long treatment relationship with Gina, the ALJ gave those medical source statements "little weight." *See id.* at 894–95. The ALJ observed that Dr. Bastible was Gina's "treating physician," *id.* at 893, "who describes longstanding treatment [but] is not a specialist," *id.* at 895. The ALJ noted that Dr. Bastible failed to provide any exam findings or diagnostic studies to support her conclusions, even though Dr. Bastible was specifically asked to do so. *See id.* at 894. The ALJ also noted

that Dr. Bastible's conclusions were not supported by other evidence in the record.  *See id.* at 895.  The ALJ thus applied all the *Burgess* factors and provided "good reasons" for giving less-than-controlling weight to Dr. Bastible's medical source statements.  *See Schillo*, 31 F.4th at 76 (holding that "the reasons the ALJ provided—that [the treating physicians'] opinions were conclusory, unhelpful with respect to assessing RFC, and inconsistent with the objective medical evidence—were 'good reasons' supported by substantial evidence.").

Gina acknowledges that "Dr. Bastible's treatment notes may [have been] lacking," but she nevertheless argues that "as [Gina's] primary care provider," Dr. Bastible would "have had access to [Gina's] treatment notes from other providers, including [Eugene Gosy, MD], whose records did contain abnormal physical examinations."  *See* Docket Item 8-1 at 19.  But that is pure speculation on Gina's part. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (explaining that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say."); *see also Burgess*, 537 F.3d at 128 (acknowledging that "the claimant has the general burden of proving that he or she has a disability within the meaning of the Act" (citation modified)).  And in any event, Dr. Gosy's treatment records cannot cure the supportability deficiencies that the ALJ identified in Dr. Bastible's own medical source statements and records.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").  That is, Dr. Gosy's records cannot make up for Dr. Bastible's failure to provide medical evidence for her conclusions even after the ALJ asked her to do so.

In sum, the ALJ did not improperly evaluate Dr. Bastible's medical source statements under the treating physician rule.  On the contrary, the ALJ explicitly and correctly addressed the relevant criteria under that rule.  Gina's first argument therefore lacks merit.

### B.  RFC Determination

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo*, 31 F.4th at 78.  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  If the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, then an RFC consistent with the record is not error.  *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (explaining that remand is not necessary where an ALJ's analysis "regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

During the administrative hearing on June 29, 2021, Dr. Dhiman opined, among other things, that Gina could: (1) occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; (2) sit for a total of six hours during an eight-hour workday; (3) stand and walk for a total of two hours during an eight-hour workday; (4) occasionally climb ramps and stairs; (5) never climb ladders, ropes, or scaffolds; (6) occasionally stoop, kneel, crouch, or crawl; (7) occasionally reach overhead but frequently reach in

9

all other directions; and (8) frequently handle and finger. *See* Docket Item 5 at 149. Dr. Dhiman further opined that Gina could not perform work activities that involved looking at a computer screen or required "far" visual acuity. *See id.* at 152. The ALJ gave that part of Dr. Dhiman's opinion "great weight" because it was well supported by the record and because Dr. Dhiman had knowledge of the program and the benefit of reviewing Gina's entire disability file. *See id.* at 895. And the ALJ incorporated all those limitations into the RFC. *See id.* at 889.

Dr. Dhiman also opined, however, that Gina could only occasionally avoid ordinary workplace hazards. *See id.* at 155–56. The ALJ gave that part of Dr. Dhiman's opinion "little weight" because Gina's activities of daily living—including her ability to drive and shop—"require visual ability that . . . exceeds" an only occasional ability to avoid ordinary workplace hazards, such as approaching people or vehicles. *See id.* at 895. Gina argues that the ALJ's rejection of that part of Dr. Dhiman's opinion constituted impermissible cherry-picking, which resulted in an RFC unsupported by substantial evidence. *See* Docket Item 8-1 at 22–23. That argument falls short for two reasons.

First, the ALJ "was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *See Matta*, 508 F. App'x at 56. In doing that, the ALJ was not obliged to accept Dr. Dhiman's opinion in its entirety. *See, e.g., Laurie A. F. v. Comm'r of Soc. Sec.*, 2026 WL 81696, at *4 (W.D.N.Y. Jan. 12, 2026) ("It is well-settled that, when formulating an RFC, an ALJ is permitted to accept or reject portions of medical opinions to the extent they are inconsistent with the record."); *see also Venio v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (acknowledging

that "genuine conflicts in the medical evidence are for the [ALJ] to resolve." (citation modified)).  In other words, the ALJ could, and did, accept certain parts of the opinion and reject others as long as the ALJ explained his reasoning.

What is more, Gina does not point to any evidence from which a reasonable factfinder would have to conclude that despite her ability to drive and shop, she could avoid ordinary workplace hazards, such as approaching people or vehicles, only occasionally—that is, one-third of the time.  *See Brault*, 683 F.3d at 448.  So Gina's argument misunderstands her burden to show that she cannot do what the RFC says that she can.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so."); *see also Regina M. v. Comm'r of Soc. Sec.*, 2025 WL 899008, at *3 (W.D.N.Y. Mar. 25, 2025) (acknowledging that "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence, and what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." (citation modified)).

In sum, and contrary to Gina's argument, the ALJ did not "cherry-pick"; rather, the ALJ credited those parts of Dr. Dhiman's opinion that the ALJ found persuasive, discredited those parts that were inconsistent with the record, and explained why.  Gina therefore is not entitled to remand based on the ALJ's finding that she could avoid ordinary workplace hazards more than occasionally.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Gina's

11

motion for judgment on the pleadings, Docket Item 8, is DENIED, and the

Commissioner's cross motion for judgment on the pleadings, Docket Item 13, is

GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


       SO ORDERED.

       Dated:  June 18, 2026
                 Buffalo, New York



                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE